**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| MS. SHAWNTE ANNE LEVY, a/k/a EL SOUDANI EL WAHHABI, #416-369<br><br>    Plaintiff,<br><br>    v.<br><br>WEXFORD HEALTH SOURCES, INC., MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES,<br>GREGG L. HERSHBERGER, COMMISSIONER; and<br>FRANK B. BISHOP, WARDEN,<br><br>    Defendants. | Civil Action No. TDC-14-3678 |

**MEMORANDUM OPINION**

Plaintiff Shawnte Anne Levy ("Levy"), also known as El Soudani El Wahhabi, has been diagnosed with several psychiatric disorders and is currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. Levy has been diagnosed with Gender Identity Disorder ("GID"), or gender dysphoria, a condition under which a person feels strongly that he or she is not the gender of his or her physical appearance. She[1] has filed a Complaint under 42 U.S.C. § 1983 against Wexford Health Sources, Inc. ("Wexford"), the health care provider under contract to provide certain medical services to Maryland state prisoners; the Maryland Department of Public Safety and Correctional Services ("DPSCS"); former Division of Correction ("DOC") Commissioner Gregg L. Hershberger;[2] and NBCI Warden Frank Bishop.

---

[1] Because Levy identifies as female, the Court will use the feminine pronoun to refer to her.

[2] Wayne Webb has replaced Hershberger as the Acting Commissioner.

Levy seeks injunctive relief in the form of estrogen medication and transgender psychotherapy based on her allegations that Defendants have violated her rights under the Eighth and Fourteenth Amendments to the United States Constitution and the Maryland Declaration of Rights by denying her requests for such treatment.[3] Levy also asserts that this denial of treatment has violated her rights under the Fairness for All Marylanders Act, Md. Code Ann., State Gov't, § 20-304 (2015).[4] She further alleges a violation of the Fourteenth Amendment based on NBCI's failure to formally list her name in prison records as "Shawnte Anne Levy," despite the fact that she has had her name legally changed, and seeks injunctive relief to require NBCI to update her commitment record to reflect that name change.

Pending before the Court are: Wexford's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment; a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by DPSCS, Hershberger, and Bishop (collectively, the "Correctional Defendants"); Levy's Motion for Partial Summary Judgment; Levy's Motion for a Temporary Restraining Order and Preliminary Injunction; the Correctional Defendants' Motion to Strike Levy's Supplemental Complaint; and Wexford's Supplemental and Amended Motions for Summary Judgment. No hearing is necessary to resolve the Motions. *See* D. Md. Local R. 105.6. For the reasons that follow, Wexford's Motions to Dismiss or for Summary Judgment are GRANTED IN PART and DENIED IN PART; the Correctional Defendants' Motion to Dismiss

---

[3] The Maryland Declaration of Rights is *in pari materia* with the United States Constitution and its Amendments. *See Evans v. State*, 914 A.2d 25, 67 (2006) (stating that the parallel provisions of the Maryland Declaration of Rights should not be "read more broadly (or narrowly)" than the Eighth and Fourteenth Amendments to the U.S. Constitution). Levy's Maryland Declaration of Rights claims thus essentially fold into her federal constitutional claims. For ease of reference, the Court discusses those claims only in the constitutional context.

[4] This Act prohibits discrimination in places of "public accommodation." Md. Code. Ann., State Gov't § 20-304. Because a prison is not a place of public accommodation, this cause of action fails and is therefore dismissed.

or for Summary Judgment is GRANTED IN PART and DENIED IN PART; Levy's Motion for Partial Summary Judgment is DENIED; Levy's Motion for a Temporary Restraining Order or for a Preliminary Injunction is DENIED; and the Correctional Defendants' Motion to Strike is DENIED.

## BACKGROUND

### I.  Gender Identification Disorder

The parties do not explain the circumstances that led to Levy's confinement at NBCI. What is known is that Levy, then known as El Wahhabi, was committed to Clifton T. Perkins Hospital Center ("CTPHC")[5] for psychiatric treatment, but was transferred to DPSCS after she murdered a fellow patient. Levy was transferred to NBCI on September 16, 2013. Within a week of that transfer, Levy wrote the first of several letters to NCBI Psychology Department Director Bruce Liller, asking for GID and transgender health care and amenities.

While at NBCI, Levy has received medical care from Wexford and mental health care from DPSCS staff and employees of MHM Services, Inc. ("MHM"), the entity under contract with the DPSCS to provide mental health services. Levy repeatedly told prison mental health personnel that she had been diagnosed with GID, and she repeatedly requested GID treatment. As part of her efforts, on March 24, 2014, Levy filed a request for an administrative remedy ("ARP") in which she expressly directed NBCI officials to her medical records from CTPHC, which she stated would document her GID diagnosis dating back to 1984. Despite this

---

[5]  CTPHC is a psychiatric hospital administered by Maryland's Department of Health and Mental Hygiene. It receives patients requiring psychiatric evaluation who have been accused of felonies and have raised the Not Criminally Responsible ("NCR") defense and/or whose competency to stand trial is in question. CTPHC also provides treatment to offenders who have been adjudicated NCR and/or incompetent to stand trial and accepts by transfer inmates from other correctional facilities who meet the criteria for involuntary commitment. CTPHC further accepts patients from other state regional psychiatric hospitals whose behavior is violent and aggressive. *See* http://dhmh.maryland.gov/perkins/SitePages/Home.aspx.

information, it does not appear that Defendants ever sought or obtained those records until after Levy filed suit. Instead, prison mental health personnel repeatedly characterized Levy's claim that she suffered from GID as self-diagnosed, even as they noted her depression and attempts at self-mutilation.

Because the prison mental health staff believed that Levy did not have a GID diagnosis, they repeatedly informed her that, under prison policy, she was not entitled to the transgender treatment that she was seeking. That policy is a part of a February 22, 2012 DPSCS Office of Clinical Services/Inmate Health Services Medical Evaluations Manual, in effect at the time Levy entered NBCI, which states that DPSCS will provide transgender treatment only to inmates who have a transgender diagnosis prior to entering the prison, or prior enrollment in a certified Transgender Program. Wexford, as the primary medical contractor to DPSCS prisons, is contractually obligated to follow this policy.

Levy's March 24, 2014 ARP regarding the prison's failure to provide her GID treatment was denied the next day after the prison determined that it was "frivolous" and "without merit" because Levy was "indeed a male inmate." Compl. Ex. 1 at 2, ECF No. 1-1.[6] The denial admonished Levy that "inmates may not seek remedy through a complaint which is not serious or practical in content or form." *Id.* That dismissal was signed by a member of prison staff on behalf of Warden Bishop. Levy appealed that denial to the Inmate Grievance Office ("IGO"). On December 8, 2014, the IGO instructed Levy to provide the medical records referenced in the ARP within 30 days. When Levy failed to obtain the records from CTPHC and submit them, the IGO administratively closed her appeal.

---

[6] This opinion references the pagination designated by the Court's electronic docketing system.

Levy filed her Complaint in this Court on November 20, 2014, seeking an injunction requiring that she be provided with estrogen medication and GID psychotherapy. On May 29, 2015, James K. Holwager, Director of Mental Health for DPSCS, submitted a Declaration stating that he recently received copies of Levy's mental health records from CTPHC, including summaries of her mental health care and diagnosis. After reviewing the medical records, Holwager concluded that Levy is suffering from multiple simultaneous conditions, including GID. Holwager noted that Levy currently is housed in the Special Needs Unit for management of the mentally ill and that she receives care for her psychiatric diagnoses through MHM and mental health care from staff of the psychology department at NBCI. Based on Levy's prior diagnosis, Holwager recommended that Levy be considered a candidate for treatment with hormones, and if such treatment is approved, that she be allowed to wear female undergarments. On June 11, 2015, Levy filed an Amended Complaint in which she reiterated that she is seeking an injunction requiring that she receive estrogen medication and GID psychotherapy.

In July 2015, Levy was evaluated for possible hormone therapy treatment and was referred to a University of Maryland endocrinologist. Levy was also authorized to wear a sports bra. On August 24, 2015, Levy was examined by an endocrinologist at University of Maryland Medical Center. In October 2015, she had blood work to determine whether she could proceed with hormone therapy. On December 10, 2015, she had another appointment with the endocrinologist, at which a follow-up appointment was scheduled for January 28, 2016.

On January 27, 2016, however, Levy submitted a verified "Supplement Complaint" asserting that Defendants have violated their policy on transgender treatment, that the hormone treatment has not proceeded, that she continues to suffer mental anguish and depression, and that

she considers self-mutilation.  On February 10, 2016, the Correctional Defendants filed a Motion to Strike Levy's Supplemental Complaint, asserting that it was procedurally improper.

Also on January 27, 2016, Levy filed a Motion for a Temporary Restraining Order and Preliminary Injunction seeking an order mandating that the treatment commence.  The next day, on January 28, 2016, Levy was seen by the endocrinologist and received a hormone treatment plan consisting of two different medications, spironolactone and estradiol.  On February 24, 2016, Levy reported that on February 13, 2016, she received her first supply of spironolactone, but that on February 17, 2016, a correctional officer ordered her to surrender the spironolactone. She also reported that she had not yet received the estradiol, which comes in patch form.

## II. Name Change

On March 26, 2014, Levy, then legally known as El Soudani El Wahhabi, filed an action in the Circuit Court for Allegany County seeking a name change.  *See In the Matter of: El Soudani El Wahhabi,* Case No. 01C14040428 (Cir. Ct. Allegany Cty.), *available at*: http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis.  On January 5, 2015, the Circuit Court granted the name change and sent notice to Levy and to NBCI.  *Id.*

DPSCS has a formal procedure for changing an inmate's name on commitment records. The policy requires that the inmate seek and obtain an amended commitment order from the sentencing judge.  That policy dictates that absent an amended commitment order, the prison may list an inmate's new legal name only as an alias.  In accordance with this policy, because Levy has not obtained an order from her sentencing judge, NBCI officials have not changed her commitment record name.

On June 11, 2015, in Levy's Amended Complaint, she added a claim seeking an injunction requiring that her commitment record be changed to reflect her new name.  On July

30, 2015, NBCI reported that, in accordance with its policy, it had added the name "Shawnte Anne Levy" as an alias on the Offender Case Manager System and NBCI's Inmate Data Manager program and had issued her a new identification card with that name listed on the back as an alias.

## DISCUSSION

**I.     Motions to Dismiss and for Summary Judgment**

In their Motion, the Correctional Defendants argue that DPSCS is entitled to Eleventh Amendment immunity and is not a proper party to suit under 42 U.S.C. § 1983, that Defendants Hershberger and Bishop are not personally liable for Levy's health care, and that Levy has failed fully to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §§ 1997e (2012). The Correctional Defendants also argue that they are entitled to summary judgment based on the record evidence, and that the controversy has been rendered moot because Levy is now being treated for GID.

In its Motion, Wexford seeks dismissal or summary judgment on the basis that Levy has failed to state a claim under any of the federal or state legal theories she asserts. Wexford also argues that it should be dismissed as a defendant because, as a private corporation carrying out a governmental function such as the delivery of medical care in a prison setting, it may be sued under § 1983 only if the alleged constitutional deprivation results from a policy, custom or practice of the entity. *See Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 690 (1978).

In Levy's June 11, 2015 Motion for Partial Summary Judgment, filed after DPSCS medical personnel acknowledged that she had been diagnosed with GID before she came to NBCI, Levy seeks summary judgment granting her requested relief of hormone therapy and GID

psychotherapy. In her Motion for a Temporary Restraining Order and Preliminary Injunction, filed on January 27, 2016, she argues that such an order should be entered immediately because of the psychological harm she is enduring without such treatment.

### A.    Eleventh Amendment Immunity

DPSCS seeks dismissal based on Eleventh Amendment immunity. Whether Eleventh Amendment immunity is a jurisdictional matter is a question that the Supreme Court has not resolved. *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 391 (1998); *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) ("While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings, we have recognized that it is not coextensive with the limitations on judicial power in Article III."). Because this argument may implicate jurisdiction, the Court addresses it first.

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments have sovereign immunity from suit in federal court. *See Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 100 (1985). This bar "exists whether the relief sought is legal or equitable." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Pennhurst*, 465 at 100-101). Although the Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law," *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)), this rule does not extend to state agencies as parties. Because Maryland has not waived sovereign immunity under the Eleventh Amendment for itself or its agencies and departments, the Eleventh Amendment bars all claims in this case against the DPSCS. The Court dismisses DPSCS as a defendant.

### B.     Name Change

Levy seeks injunctive relief requiring that NBCI change her name in its commitment records from El Soudani El Wahhabi to Shawnte Anne Levy.  Levy secured a formal name change from the Circuit Court for Allegany County, and NBCI now lists Levy's new name as an alias, but it has not changed her official name in her commitment record.  The Correctional Defendants argue that they are entitled to summary judgment on this claim because NBCI's handling of Levy's name change conforms with a neutral prison policy regarding name changes that mandates that an inmate's name may not officially be changed absent an order from the inmate's sentencing judge.

#### 1.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty lobby, Inc.,* 477 U.S. 242, 255 1986).  The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Felty v. Grave Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987).  The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson,* 477 U.S. at 248) (internal quotation marks omitted).  A dispute of material fact is only

"genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson,* 477 U.S. at 248-49.

### 2. Equal Protection Claim

Levy has not identified a constitutional basis underlying her name change claim, but because the name change issue is intertwined with Levy's GID, the Court presumes that Levy is alleging a violation of the Equal Protection Clause of the United States Constitution based on sex or sexual identification. An inmate can establish an equal protection claim if it can be shown that (1) the inmate is being intentionally or purposefully discriminated against on the basis of membership in a protected class; and (2) the discrimination is not justified by legitimate penological interests. *See Morrison v. Garraghty,* 239 F.3d 648, 657 (4th Cir. 2001).

The Correctional Defendants have established that Levy's name change is recognized as an alias on NBCI internal data systems and that she has been provided a new identification card listing "Levy" on the back as an alias. Prison policy, however, does not permit an inmate's official name to be changed unless the sentencing judge "issue[s] an amended commitment [order] showing the new name." Correctional Defs.' Resp. Pl.'s Mot. Partial Summ. J. Ex. 3 at 10, Division of Correction Manual: DOC.100.0002 § 25(A) (Inmate Name Changes), ECF No. 46-3. To date, it appears that Levy has not submitted her court-approved name change to her sentencing judge and requested such a change. Thus, NCBI's failure to change Levy's name is not based on Levy's membership in a protected class, but based on the application and enforcement of a neutral policy. A process is in place for Levy to obtain the recognition she requests, and Levy is free to avail herself of that process. Nothing more is constitutionally required. The Correctional Defendants are entitled to summary judgment on this claim.

### C.      Hormone Therapy and GID Psychotherapy

Defendants argue that Levy's Complaint must be dismissed or summary judgment entered in their favor because Levy's claims relating to GID are now moot.  Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted).  A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Defendants acknowledge that because Levy was diagnosed with GID before being incarcerated at NBCI, she is entitled under the prison's policy to treatment for that condition, and they assert that they are taking steps to provide such treatment.  It is undisputed that Levy is receiving psychotherapy for GID and that she is permitted to wear female undergarments.  It is also undisputed that Levy was approved for hormone treatment and received a treatment plan on January 28, 2016.  Defendants thus argue that because Levy is now receiving the injunctive relief she sought, there is no active controversy for this Court to adjudicate.

Levy, however, tells a slightly different story.  She asserts that she continues to encounter difficulties in receiving hormone replacement therapy.  Pursuant to the hormone treatment plan approved on January 28, 2016, Levy was issued pills for one form of medication, spironolactone, on February 13, 2016.  According to Levy, those pills were then seized from her by correctional officials on February 17, 2016.  The basis for that seizure is unclear.  It is also unclear whether she has received the second medication, estradiol, which comes in the form of a patch.  If true, these allegations indicate that the requested relief of hormone therapy has not been fulfilled.  Given that Levy's allegations of continued delays in providing her treatment follow what appears

to have been a substantial delay by the prison medical staff in seeking and obtaining Levy's medical records from CTPHC, the Court cannot safely conclude that the treatment program has been fully and permanently implemented. The Court therefore concludes that there remains an active controversy such that this case is not moot.

However, in recognition of the fact that Levy's hormone therapy may be fully implemented in the near future, the Court will provide Defendants the opportunity to render this claim moot before ruling on the merits of the unresolved issues in the pending Motions. Accordingly, except with respect to issues otherwise resolved, the Court will deny without prejudice Wexford's Motions to Dismiss or for Summary Judgment, the Correctional Defendants' Motion to Dismiss or for Summary Judgment, and Levy's Motion for Partial Summary Judgment

To facilitate resolution of these matters, the Court orders Defendants to submit reports at 60-day intervals after the date of this Order informing the Court of the status of Levy's hormone treatment program. Levy may respond with a written submission within 14 days of the filing of each of Defendants' status reports. After 180 days, if appropriate, Defendants may file a Motion to Dismiss on the grounds that the case is moot. In the alternative, after 180 days, Defendants may renew their Motions to Dismiss or for Summary Judgment as to the issues unresolved by this Opinion. After 180 days, Levy may re-file her Motion for Partial Summary Judgment if the requested relief has not been provided. In the event that such motions are re-filed, the parties may incorporate by reference arguments made in their original briefs.

**II.     Motion for a Temporary Restraining Order and Preliminary Injunction**

Levy filed her Motion for a Temporary Restraining Order and Preliminary Injunction on January 27, 2016. On January 28, 2016, medical personnel approved Levy's hormone treatment

program.  Levy received her first medication on February 13, 2016.  As discussed above, it is unclear whether the remaining medication has been received.  Because all parties have received notice of the Motion and have had an opportunity to respond, the Court construes the Motion as one for a preliminary injunction.  Fed. R. Civ. P. 65(a).

To obtain a preliminary injunction, a plaintiff must establish that (1) the plaintiff is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) an injunction is in the public interest.  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011).  Because a preliminary injunction is "an extraordinary remedy . . . [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  The plaintiff must satisfy all four of these requirements.  *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009).

As to the likelihood of success on the merits, there is some indication that Levy could prevail on the merits of her claim for injunctive relief in the form of hormone therapy.  Under the Eighth Amendment, a prisoner is entitled to psychological or psychiatric treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial."  *Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977).  Defendants have acknowledged that Levy has been diagnosed with GID; Levy's condition is treatable with hormone therapy; and there is some indication that denial of such care could lead to further

13

mental deterioration and self-mutilation. Although there remain unanswered questions, such as the full factual basis for the delay of one to two years before NBCI sought Levy's medical records from CTPHC, Levy has made a substantial argument that she has a likelihood of success on the merits.

The Court, however, need not decide whether Levy has satisfied that prong because Levy's Motion falters on the issue of irreparable harm.  Levy's hormone treatment plan was approved one day after the Motion was filed, and her first prescription was filled on February 13, 2016, so steps have been taken toward implementing the treatment plan.  The Court therefore finds that because NBCI has started the process of providing Levy with the relief that she seeks, she cannot establish that there is a likelihood that, in the absence of a preliminary injunction, she will suffer irreparable harm.  The Motion is therefore denied.

### III.   The Correctional Defendants' Motion to Strike

The Correctional Defendants ask the Court to strike Levy's Supplemental Complaint because it was filed without permission of the Court.  Levy filed that Supplemental Complaint after filing her original Complaint and an Amended Complaint.  The Correctional Defendants are correct that Levy's Supplemental Complaint is technically improper because a party may amend its pleading without leave of the Court only within 21 days after serving it or within 21 days of service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1).  Both of those deadlines had passed by the time Levy filed her Supplemental Complaint.

However, the Court notes that the Supplemental Complaint does not add new causes of action but instead simply asserts additional relevant facts relating to more recent events. Because the Court does not find that the Supplemental Complaint prejudices Defendants, and because Levy is proceeding *pro se*, the Court denies the Motion to Strike and accepts the

Supplemental Complaint. Levy's current complaint consists of the collective allegations in the original Complaint, the First Amended Complaint, and the Supplemental Complaint. The Court cautions Levy that any additional amended complaints filed without a motion for leave to amend will not be accepted.

## CONCLUSION

For the foregoing reasons, the Correctional Defendants' Motion to Dismiss or for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Motion is granted as to DPSCS, which is dismissed as a defendant. The Motion is granted as to the Fairness for All Marylanders Act claim and the claim seeking a change to Levy's name in her commitment record. The Motion is denied without prejudice as to all other issues.

Wexford's Motions to Dismiss or for Summary Judgment are GRANTED IN PART and DENIED IN PART. The Motions are granted as to the Fairness for All Marylanders Act claim and denied without prejudice as to all other issues.

Levy's Motion for Partial Summary Judgment is DENIED without prejudice. Levy's Motion for a Temporary Restraining Order and a Preliminary Injunction is DENIED. The Correctional Defendants' Motion to Strike is DENIED.

Defendants shall SUBMIT, under seal, status reports at 60-day intervals, beginning 60 days after the date of the accompanying Order, regarding the treatment of Levy's GID. After 180 days, Defendants may file a Motion to Dismiss based on mootness or renew their Motions to Dismiss or for Summary Judgment, and Levy may renew her Motion for Partial Summary Judgment.

A separate Order shall issue.


Date:   March 7, 2016                              _____/s/_____
                                                   THEODORE D. CHUANG
                                                   United States District Judge